L. R. BAIRD as Receiver for the First State Bank of Beulah, a Corporation, Respondent, v. ABRAHAM FISCHER, Maria Fischer, Mercer County, North Dakota, a Corporation, Provident Life Insurance Company, Burleigh County, North Dakota, a Corporation, and all other Persons Unknown Claiming any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Complaint, Defendants. PROVIDENT LIFE INSURANCE COMPANY, BURLEIGH COUNTY, NORTH DAKOTA, a Corporation, Appellant.

(220 N. W. 892.)

Opinion filed January 5, 1928. Rehearing denied August 2, 1928.

*Dullam, Young & Burke,* for appellant.

*Hyland & Foster,* for respondent.

NUESSLE, Ch. J. This is an action to quiet title. The plaintiff is the receiver of the First State Bank of Beulah, an insolvent domestic banking corporation. The complaint is in the statutory form. The Provident Life Insurance Company is the only answering defendant. It denies the allegations of the complaint, pleads title and possession in itself under a deed issued pursuant to mortgage foreclosure and sale, and asks that title be quieted in it as against the plaintiff. Plaintiff, replying, sets up a claim of superior title by virtue of a tax deed. The facts were stipulated. The trial court found for the plaintiff. Whereupon the defendant perfected this appeal.

The record discloses the following facts. In October, 1916, Fischer mortgaged the real property involved in this action to the defendant Provident Life Insurance Company to secure the payment of $1,500. In November, 1916, Fischer gave a second mortgage on the property to the First State Bank of Beulah to secure the payment of $1,000. Neither of the mortgages was ever paid. The bank at all times re-

tained ownership of the second mortgage. In November, 1922, the defendant began proceedings to foreclose its mortgage by advertisement, and pursuant thereto the property was sold on January 29th, 1923, for the amount of the mortgage indebtedness and costs, the defendant being the purchaser at the sale. There was no redemption from such sale and sheriff's deed was issued to the defendant on February 15, 1924. The 1918 taxes on the property were not paid and it was sold at tax sale in December, 1919, to one Seivert. There was no redemption from such sale and on February 2, 1923, Seivert assigned the tax sale certificate to the bank. On February 10, 1923, at the instance of the bank, the county auditor gave notice of expiration of the period of redemption. No redemption was made and tax deed was issued to the bank on May 17, 1923. This deed is the deed under which plaintiff as receiver claims title. Thus the contest in this case is between the plaintiff claiming under the tax deed and the defendant Provident Life Insurance Company claiming under sheriff's deed issued pursuant to the foreclosure of its first mortgage.

On these facts the issues here for determination are: First, as to whether the bank as a junior mortgagee might acquire tax title for taxes falling due subsequent to the execution of its mortgage and assert title as against the defendant, the senior mortgagee, and, second, as to whether the tax deed is a regular and valid deed. If the first question is determined adversely to the plaintiff it will be unnecessary to pass upon the second.

Section 2211, Comp. Laws 1913, provides:

"Any person who has a lien by mortgage or otherwise upon any real property that has been sold for taxes or on which the taxes have not been paid, may redeem from such sale, or may pay such taxes and the interest, penalty and costs thereon, and the receipt of the county treasurer or the certificate of redemption, as the case may be, shall constitute an additional lien on such land to the amount therein stated, and the amount so paid and the interest thereon at the rate specified in the mortgage or other instrument, shall be collected with, as part of, and in the same manner as the amount secured by the original lien."

It is appellant's contention that by virtue of this statutory provision each of the mortgagees was estopped to take tax title, either as against the other mortgagee or against their common mortgagor; that under

the statute the mortgagees were permitted to pay the taxes and to resort to the security of the mortgages for the amounts so paid; that under these circumstances equity will permit neither to refrain from paying taxes as the same become due and thereafter acquire a tax deed adverse to the other; that when the bank took the assignment of the tax certificate in question it took the same as a trustee for itself and for the senior mortgagee, and while it holds the tax deed issued pursuant to this certificate as security for the amount paid for it, it cannot claim title thereunder as against the defendant; that so far as the defendant is concerned the purchase of the certificate was a payment of the tax. On the other hand, the plaintiff insists that in this state a mortgage is security only for the debt and its only effect is to impose a lien upon the property mortgaged; that there is no duty imposed upon the mortgagee to pay the taxes and that the rule that one mortgagee may not procure a tax title adverse to his mortgagor or other mortgagee applies only where there is a duty upon him to pay the taxes; that even though the rule does apply in this jurisdiction, yet it cannot in the instant case for the reason that at the time the bank took the assignment of the tax certificate it no longer had a lien because of the foreclosure of the defendant's first mortgage on January 23, 1923; that, in any event, under the peculiar provision of our statute, § 2196, relating to the sale and purchase of real property at tax sale, the plaintiff was not precluded from purchasing the premises on which it had the mortgage at tax sale and taking title through and under deed issued pursuant to such sale.

There is no question but that one who owes a duty to pay taxes on property cannot by omitting to do so, purchase at a sale of the property for the nonpayment, and thereby strengthen his title. See notes in 15 Am. Dec. at page 684 and in 75 Am. St. Rep. at page 229; See also 26 R. C. L. 412; 37 Cyc. 1345. The plaintiff concedes this to be the law but contends that it has no application to mortgagees in this state since here a mortgage is security only for the mortgage debt and merely a lien upon the property mortgaged and, therefore, there is no duty upon the mortgagee to pay the taxes. While there is a wide divergence in the holdings with respect to the right of a mortgagee who has only a lien, to procure and assert a tax title as against either his mortgagor or other mortgagees, nevertheless we think that the

more widely accepted and the more just rule forbids a mortgagee such right. As was said by Judge Cooley in the case of Connecticut Mut. L. Ins. Co. v. Bulte, 45 Mich. 113, 7 N. W. 707:

"But it is possible for parties to have antagonistic claims in lands, which place them neither actually nor constructively in confidential relations. In some cases no doubt either is at liberty to strengthen his title as against the other by a tax purchase. Blackwood v. Van Vleit, 30 Mich. 118. It is claimed that a second mortgagee occupies this position in respect to the first mortgagee, and if the latter does not protect his lien by payment of the taxes or by attending as purchaser at the tax sales, the former is under no obligation to do so for him. And it is no doubt true that he is under no obligation to protect the first mortgagee; but the real point in controversy is, whether, if the second mortgagee pay the taxes or bid off the land, the payment or purchase will not ipso facto constitute a protection?"

"It certainly cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sale. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee or to the owner. To the state each one of the three may be said to owe the duty to pay the taxes; and the state will sell the interest of all if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor; but if he makes default either of the mortgagees may pay, and one of the two must do so or the land will be sold and his lien extinguished. But in such cases, where each has the same right, payment by one is allowed to increase the amount of his encumbrance, for in no other way could he have security for its repayment by the mortgagor, who ought to protect the security he has given.

"When therefore each mortgagee has the same interest in making payment of the tax, and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not be suffered to cut off the right of the other, because it is based as much upon his own default as upon that of the party whose lien he seeks to extinguish. It is as just and as politic here as it is in the case of tenants in common, to hold that the purchase is only a payment of the tax."

This is a classic statement of the reasons for holding that one mort-

gagee may not acquire and assert title under a tax deed as against another mortgagee. See also Lane v. Wright, 121 Iowa, 376, 100 Am. St. Rep. 362, 96 N. W. 902; Norton v. Metropolitan L. Ins. Co. 74 Minn. 484, 77 N. W. 298, 539; Jones, Mortg. 7th ed. § 714; Cooley, Taxn., § 1440; 19 R. C. L. 398; notes in 11 Ann. Cas. p. 759 and in L.R.A.1917D, 522. But we need not look beyond the decisions of our own court for precedent in this direction. This court in the case of Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855, speaking through Judge Wallin said with respect to a contest between a mortgagor and a mortgagee who claimed under a tax deed procured while he was a mortgagee:

"But aside from this fact (that the tax deeds were defective), the deeds cannot stand as a conveyance in favor of the defendant and against the plaintiff, because when they were obtained by Gurd he was in the relation of a mortgagee, and, as such, was given permission by the terms of the mortgage to pay taxes on the land, and add the amount so paid out to the mortgage debt. It is well established that a mortgagee under such circumstances, is estopped to acquire title as against the mortgagor. Under such a state of facts, a trust relation arises, in which the mortgagee or his grantee becomes a trustee, and as such is not only debarred from acquiring title himself as against the trustor, but is under an obligation to pay the taxes, as a means of protecting the trust property as against a hostile title . . ." (citing authorities).

We had occasion to consider the rule there adopted and its application in the late case of Williams v. Campion, 53 N. D. 456, 206 N. W. 703. We there said:

"The first question to consider is this: Where one executes a note secured by mortgage, the mortgage containing a clause permitting the mortgagee to pay the taxes and add the amount to the mortgage debt, and the premises are subsequently sold to one other than the mortgagee, who acquires title by tax deed, does the conveyance of this title to the mortgagee, or his assignee, defeat the right to recover the debt? Counsel rely principally upon the case of Finlayson v. Peterson, supra. In that case the mortgagee, who had acquired title through a void foreclosure, set up, in addition, a tax title. The mortgage contained a clause similar to that pleaded in the instant case. The holding on this

point was (see page 53 of the opinion) that the tax deed could not stand as a conveyance in favor of the mortgagee, because when obtained the mortgagee had express permission by the terms of the mortgage to pay the taxes and add the amount to the mortgage debt and that, by reason of such permission, the mortgagee was 'estopped to acquire title as against the mortgagor.' In the instant case it is not alleged that Moore, who acquired the tax title, occupied the position of a mortgagee, for aught that appears in the answer in the instant case Moore's title was adverse to the plaintiff's lien as well as to the defendants' title, as the tax lien was superior to both. When, therefore, the tax lien had, as alleged in the answer, ripened into a tax deed, there was a deraignment of title and both the mortgage lien and the defendants' title were extinguished. The mortgage lien being extinguished, the mortgagee, or his successor in interest, no longer stood in any relation of trust or confidence with respect to the property and was as free to bargain for its purchase as though the mortgage had never existed. There can be no basis for any contention that the tax lien clause in the mortgage obligated the mortgagee to pay taxes; it only permitted this to be done. Under the facts alleged in the answer, he did not in fact pay the taxes; he purchased a fee title. We are clearly of the opinion that the principle applied in the case of Finlayson v. Peterson, supra, has no application under these facts."

See also Safe Deposit & T. Co. v. Wickhem, 9 S. D. 341, 62 Am. St. Rep. 873, 69 N. W. 14; First Nat. Bank v. McCarthy, 18 S. D. 218, 100 N. W. 14.

But the plaintiff insists that in the instant case the first mortgage held by the defendant Life Insurance Company had been foreclosed prior to the purchase of the tax certificate by the bank, and that therefore the bank was no longer a mortgagee and so was not estopped to take title through tax deed. Thus plaintiff seeks to make the distinction drawn in the cases of Williams v. Campion, and Safe Deposit & T. Co. v. Wickhem, supra. We do not think, however, that the facts justify him in this contention. The first mortgage was foreclosed by sale on January 23, 1923. Within a few days thereafter the bank procured the assignment of the tax certificate from Seivert and at once took steps to procure and did procure tax deed thereunder. Both at the time of its purchase of the tax certificate and at the time that the

deed was issued it occupied the position of a redemptioner from the foreclosure by reason of its second mortgage. It was at all times in a position to assert its rights under its mortgage until January 23, 1924, when the year of redemption would expire. During such time it was a mortgagee with all the rights of a mortgagee within the meaning of that term as used in the rule which forbids one mortgagee to procure and assert adverse title through tax deed as against another.

Lastly the plaintiff relies upon the statute, § 2196, to relieve it from the operation and effect of this rule. This section provides:

"Any person except county auditors, county treasurers, and each of their deputies or clerks, may become the purchaser at such sale. If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title and interest of any and every person, company or corporation, free from any claim, lien or incumbrance, as the owner so purchasing may be legally or equitably "bound to protect against such sale, or the taxes for which such sale was made; and no such sale of real estate for taxes shall be considered invalid on account of the same having been charged in any other name than that of the rightful owner; provided, that nothing herein contained shall be so construed as to prevent any officer or his deputy or clerk from becoming the purchaser at such sale of any lands of which he may be the owner, or upon which he may have a lien; provided, further, that no county auditor, county treasurer, their deputies or clerks, shall act as agent or attorney for the purchasers at such sale."

Generally, the purpose and effect of this section is to prohibit those who may be concerned as officers in the proceedings looking toward the collection of taxes through sale of the property, from purchasing at the sale. No reference is made in the statute to mortgagees of property that may be sold, though reference is made to owners thereof. This statute was enacted as § 81 of chapter 126, Sess. Laws 1897. Section 94 of the same chapter, heretofore quoted as § 2211, Comp. Laws 1913, makes provision whereby one who holds a lien by mortgage or otherwise upon real property may redeem from tax sale thereof or may pay taxes thereon, and any payment so made shall constitute an additional lien upon the property and shall be collected with, as a part of, and in the same manner as the amount secured by the original lien.

These two sections must be considered and construed together. Thus considered and construed it is evident that the legislature did not intend in such cases to wholly abrogate the rule which forbids a person to profit through wilful failure to discharge his duty. To give the statute the construction for which the plaintiff contends would mean that anyone—owner, mortgagee, co-tenant, lessee, agent, trustee or any other person charged with the duty of paying taxes, whether such duty arose by contract, under statute, or on application of equitable principles, might profit through willful failure to discharge a duty which was his. We therefore must hold that, under the circumstances in this case, the bank when it took the assignment of the tax certificate, in effect paid the taxes and cannot assert as against the defendant any title acquired through tax deed on account thereof.

Though the bank could not acquire title adverse to the defendant by procuring the tax deed, nevertheless the bank is not without recourse for the moneys expended by it in protecting the title. This is the effect of the statute, § 2211, supra. But regardless of the statute, and on equitable grounds, the defendant ought not and will not be permitted to assert that when the bank bought the certificate it was conclusively presumed to be doing so to protect its rights and the rights of the defendant and at the same time refuse to reimburse the bank for the payment thus made by it. To enjoy the benefit arising from the payment made by the bank the defendant must be willing to assume the burden thereof and to repay the bank. This the defendant professes to be ready and willing to do. But we are also of the opinion that the plaintiff should not be denied relief altogether. Both parties seek equitable relief, and the court having assumed jurisdiction should and will consider and determine all the rights of both respecting the subject matter. Schmidt v. Johnstone, 31 N. D. 53, 153 N. W. 293. Asking equity they must do equity. If the defendant is able to realize the amount of its claim from the mortgaged property it cannot complain if any excess above that claim is applied upon the debt due the plaintiff. To that end the plaintiff should be permitted to redeem from the defendant's foreclosure. So it follows that if the plaintiff sees fit to do so he should be permitted to redeem from the defendant's foreclosure on payment of the amount for which the property was sold

together with proper charges including taxes, if any, paid, and interest.

This being the case plaintiff, will, at his option, be permitted to redeem from the defendant's foreclosure within sixty days from the date of entry of final judgment herein, and if he does not elect to do so within such time, the defendant shall have title quieted in it to the premises in question on payment to the plaintiff of the amounts expended in the purchase of the tax certificate and in procuring deed thereunder, together with any other proper charges that may have been paid, with interest at the legal rate upon the amounts so paid.

It was stipulated in the lower court that the right to the rents and profits on account of the use and occupation of the premises in question for the years 1924 and thereafter should abide the determination of this action. The amounts of such rents and profits must therefore be taken into account in determining the sum to be paid by either party to redeem in case redemption is made.

The judgment of the district court is reversed and the case remanded with directions that judgment be entered in accordance with this opinion. It is so ordered.

BURKE, BURR, and BIRDZELL, JJ., concur.

CHRISTIANSON, J., dissents.

### On Petition for Rehearing.

PER CURIAM. In a petition for rehearing counsel for the respondent lay special emphasis upon § 2196 of the Compiled Laws of 1913, arguing that that section clearly permits mortgagees to become purchasers at tax sales and confers upon them all the rights of any other purchaser. The further contention is, in substance, that this statutory recognition of the rights of a mortgagee as a purchaser is inconsistent with the eq\'ties of the situation, as defined by this court in the case of Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855; and, as the statute was not involved in Finlayson v. Peterson, supra, its mandate should now be followed rather than the equitable theories announced in that case.

The difficulty is largely due to a striking peculiarity in the wording of the statute, § 2196, supra. That portion of the statute in which the peculiarity is manifested reads:

"Any person except county auditors, county treasurers, and each of their deputies or clerks, may become the purchaser at such sale. If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title and interest of any and every person, company or corporation, free from any claim, lien or incumbrance, as the owner so purchasing may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made; . . ."

This statute when enacted was § 81 of chapter 126 of the Session Laws of 1897. The chapter was a comprehensive act relating to revenue and taxation. It covers more than forty printed pages in the session laws. The legislative journals show that the entire act was inserted as a committee report amending House Bill No. 3. It appears from the session laws of that year that some days before the committee report embodying this act was presented the legislature had passed another bill relating specifically to delinquent taxes prior to the year 1895, chapter 67, Session Laws of 1897. Section 17 of that act reads:

"Any person may become the purchaser at such sale. If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title and interest of any and every person, company or corporation, free from any claims, lien or incumbrance, *except such right, title, interest, claim, lien or incumbrance,* as the owner so purchasing may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made." (We have italicized the portion which does not appear in the section under consideration, § 2196).

It will be seen that the second sentences in each of the above quoted sections are identical but for the omission in the former of the following language, "except such right, title, interest, claim, lien or incumbrance," immediately following the word "incumbrance." Further research establishes that § 81, chapter 126 of the Session Laws of 1897 (Comp. Laws of 1913, § 2196) is identical, except for the same omission, with section 75 of chapter 132 of the Session Laws of North Dakota for 1890 and § 87 of chapter 1 of the General Laws of Min-

nesota for 1878. Clearly, then, the Minnesota statute is the forerunner of § 75 of chapter 132 of the Session Laws of North Dakota for 1890, of § 17, chapter 67, Laws of 1897, and of § 81, chapter 126, Laws of 1897. What is the meaning of the statute with the exception included, as in Minnesota, in our own act of 1890 and in § 17, chapter 67, supra, and what is the meaning with the exception eliminated? Was the omission of the exception inadvertent or, if the inadvertence of the omission does not clearly appear, is it permissible, as a matter of statutory construction, to read the statute as though it embodied the exception?

Reading the statute with the exception included, it clearly permits an owner to purchase at tax sale and it provides that the sale shall have the effect to pass to him every right of every other person, free from any incumbrance, etc., except such as the owner may be bound to protect against the tax sale or the taxes. In other words, the owner by purchasing at the tax sale does not thereby obtain any advantage over any incumbrancer whom he was bound to protect. Their contract relations are respected and given free scope. With the exception omitted, the statute awkwardly expresses, apparently, an entirely different idea. It says that the owner purchasing acquires every right of every other person free from any incumbrance *"as"* he may be legally or equitably bound to protect against such sale, or the taxes for which the sale was made. It does not say that he acquires the interest of every other person free from *every* claim or incumbrance but only free from claims, liens, or incumbrances *"as"* he, the owner, is legally or equitably bound to protect against such sale. To illustrate: Let us assume two instances of owners purchasing their own property at tax sale upon which there are outstanding liens,—in the one case, a lien which such owner is legally obligated to protect and, in the other, one which he is neither legally nor equitably bound to protect. (One) An owner purchases at tax sale property upon which he has given an outstanding first mortgage securing a personal obligation—the mortgage embodying an express contract to pay the taxes. The awkward wording of the statute says that his purchase has the effect of passing the property to him free from the lien of this mortgage—working a direct interference with their contract. (Two) An owner has acquired property by the payment of the full agreed consideration therefor.

The property was known to be subject to a small first mortgage. For reasons satisfactory to the parties, the seller assumed this mortgage, warranted the title against it, and the purchaser, who is now the owner, neither assumed it nor withheld the amount from the seller. He is neither legally nor equitably bound to pay this mortgage. The owner subsequently becomes the purchaser at tax sale. He acquires the right, title and interest of any and every person free from any lien or incumbrance that he (the owner) may be legally or equitably bound to protect against the sale, which would not include the mortgage in question as he was under no legal or equitable obligation to protect it. In other words, construing the statute literally, an owner, by purchasing at tax sale, acquires a right superior to mortgagees toward whom he is under direct legal or equitable obligation with regard to the taxes but not necessarily superior to those toward whom he sustains no such obligation—a palpable absurdity. Furthermore, the literal meaning of the statute, without the exception, defines the purchasing owner's right to be one free from the taxes for which such sale was made. The clause "or the taxes for which such sale was made" becomes meaningless since he becomes a purchaser only by paying the amount of those taxes. This clause has meaning only when it refers to an obligation of the owner in favor of other parties to pay the taxes for which the sale was made.

If it is possible to deduce a full literal meaning from an act of the legislature containing such awkward expressions as § 2196, supra, with the significant exception omitted, it would be that the legislature has said that an owner purchasing his own property at tax sale takes every right and interest of third parties therein, free from such incumbrances as he is bound to protect against the sale. By way of emphasizing the extent to which the literal interpretation contended for may interfere with the operation of contracts of the parties and effect a shifting of the primary burden resting upon each individual to pay his own taxes, note the following: Elsewhere in the act, § 62, chapter 126, Laws of 1897, it was provided that delinquent personal taxes might be entered against the real property, and become a lien thereon, and their collection enforced by a sale in the same manner as if originally charged against the lands. Personal taxes are otherwise fixed as *personal* obligations or debts of the person against whom the

assessment is made. If we assume a tax sale of real property against which the personal tax of the owner has been spread, and a purchase of the property at the sale by the owner, his purchase cuts out the first mortgage, and the rights of such mortgagee are entirely lost unless he shall redeem by paying into the county treasury for such owner the entire amount of the original real property tax plus the personal tax of such owner so spread, which amount is then paid to the owner and added to the first mortgage. Clearly, if the statute be thus "literally" applied, it would have the effect of further abridging the right of contract between mortgagors and mortgagees by permitting a mortgagor to defeat the lien of his mortgage through the breach of an obligation that he had voluntarily undertaken and which he owed both to the public and to the mortgagee.

If it be suggested that the lien of a first mortgage may be affected to the same extent, whether the purchaser at the tax sale be an owner or a third person, a stranger to the title, and whether the personal taxes be included or not, the obvious answer is that a sale to a third person stands upon an entirely different footing. It is but a resort to a reasonable and necessary method of foreclosing a superior lien for taxes and does not purport to affect the contract relations of the mortgagor and mortgagee as between themselves. By a sale to a third person, either or both will suffer by reason of the failure to discharge the paramount tax lien; whereas, the co-called literal interpretation of § 2196, supra, necessarily fixes the rights of the parties in a manner which contradicts their own express contract provisions and places the defaulting owner who purchases at tax sale in even a stronger position than a stranger, in that he may use his certificate as a weapon to defeat his own mortgage. If to avoid this result the mortgagee redeem, he (the owner) is permitted to shift the primary obligation for the taxes from his own shoulders to the shoulders of one whom he has agreed in advance to relieve of the burden. The purchase of a tax certificate by a stranger to the title in no way affects his own primary tax obligations. It is difficult to perceive how the statute, so construed, could operate uniformly as to owners of mortgaged and unmortgaged property.

If the owner neglect to purchase at the sale and a stranger becomes the purchaser, the owner could then protect against the consequences

of the sale either by redeeming or by purchasing the tax certificate. If he should adopt the latter method, there is no substantial reason why his equitable position as against the mortgagee should be any weaker than as though he had been the original purchaser. But it would be a monstrous doctrine that would permit an owner, who is under a primary obligation to both the public and the mortgagee to pay the taxes upon his own property, to defeat his own mortgage through the purchase of a tax certificate. Of course, such a doctrine would not be sanctioned by any court, except under the unambiguous provisions of an express statute. The statute in question does not purport to say that an owner, taking a tax certificate by assignment, shall acquire a right superior to mortgages upon which he is obligated.

What is said above with respect to the rights of owners as purchasers, is said in view of the fact that owners are specifically mentioned in the statute. Of course, the statute, by clear implication, recognizes that mortgagees may likewise become purchasers and the effect of the purchase by a mortgagee must necessarily be considered in light of what is said in the statute with reference to owners. This is, in substance, the argument of the petitioner and its soundness must be conceded. However, as pointed out in the principal opinion herein, any contention that a mortgagee, by becoming a purchaser, acquires a right superior to the right of another mortgagee, toward whom he sustained either a legal or equitable obligation to pay the tax, must be examined in light of the express declaration in § 2211, Compiled Laws of 1913, which was likewise a part of the original enactment of 1897. This says that the amount of a tax paid by a mortgagee "shall constitute an additional lien on such land to the amount therein stated, and the amount so paid and the interest thereon at the rate specified in the mortgage or other instrument, shall be collected with, as part of, and in the same manner as the amount secured by the original lien." This section in no way seems to recognize that a lien holder should be able, by becoming a purchaser at tax sale, to freeze out other lien holders toward whom he sustained either a legal or equitable obligation to pay the tax. The right and the remedy given are apparently exclusive. It is a right to add the amount of the tax to the existing lien, which, of course, would have the effect of keeping alive all subsisting equities attaching as against the particular mortgagee in favor of other per-

sons. To this extent this provision is inconsistent with the so-called literal interpretation of § 2196.

We recognize that "To enable the court to insert in a statute omitted words or read in it different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute." 2 Lewis's Sutherland, Stat. Constr. 2d ed. § 411. But "Legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors or omissions, provided the intention of the legislature can be collected from the whole statute. . . ." 2 Lewis's Sutherland, Stat. Constr. 2d ed. § 410. We are of the opinion that where, as here, the origin of the statute plainly appears, it having been copied verbatim from a former statute and from the statute of another state but for the omission of a clause, and, in addition to this, it having been copied in another enactment at the same session of the legislature with the clause included, where the same procedure was given a limited application; and where the omission renders at least one clause of the statute meaningless and renders the whole, when given an attempted literal interpretation, inconsistent with other provisions of the same statute and gives it a meaning which works a substantial denial of the liberty of contract, and one which is abhorrent to natural justice and opposed to fundamental conceptions of equality of obligation of owners of property in meeting the burden of taxation; and where the difficulty arises wholly through the omission of a clause in the statute immediately following a recurring word, so that its omission may be readily accounted for as an inadvertent mistake of a copyist; and where the whole difficulty is remedied and the meaning of the statute and of every clause therein rendered clear and consistent by reading into it the portion omitted, the statute should be read as though the omitted clause were included.

The petition for rehearing is denied.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.

CHRISTIANSON, J., dissenting. As I understand the majority opinion prepared by Mr. Chief Justice Nuessle, it holds that § 2211, Comp. Laws 1913, inhibits a junior mortgagee from acquiring and asserting title under a tax deed as against a senior mortgagee for taxes falling

due while both mortgages are outstanding and unpaid (syllabus, ¶ 2); that such inhibition is not affected by § 2196 Comp. Laws 1913; that the purpose and effect of this section is to prohibit public officers having charge of tax sales from purchasing at a tax sale and that it does not permit a junior mortgagee to procure and assert a tax title as against a senior mortgagee (Syllabus, ¶ 3).

I am unable to agree with such construction and application of these statutory provisions.

Sections 2196 and 2211 were originally enacted in this state in 1890 and formed part of a comprehensive act on revenue and taxation. See Laws 1890, chapter 132, §§ 75 and 88. As indicative of the scope and purpose of such legislative enactment it may be noted that the section immediately preceding § 2211 (Comp. Laws 1913, § 2210) also formed a part of chapter 132, Laws 1890. This section authorizes any occupant or tenant of realty to pay any tax thereon that ought to be paid by the owner, lessor or other party in interest; and further authorizes the tenant or occupant to maintain a civil action against the owner, lessor or party in interest who ought to have paid them for the amount paid with interest thereon at the rate of 12 per cent, and provides that until the tenant or occupant has been reimbursed for the taxes paid the amount thereof shall "constitute a lien upon said real property." See Laws 1890, chapter 132, § 89. These three sections, however, were all omitted from the Revised Code of 1895. The laws relating to revenue and taxation as enacted and embodied in that Code were quite different from the legislative enactment of 1890. But, apparently, the departure from the law of 1890 was, in many particulars at least, unsatisfactory and in 1897 the legislative assembly enacted an act dealing with the subject of revenue and taxation which in many, if not most, respects was quite similar to the act of 1890 and re-enacted many of the provisions contained in the latter act and which had been omitted from the Revised Codes of 1895. Among the provisions contained in the act of 1890, omitted from the Revised Codes of 1895, and re-enacted in their original or slightly changed form in 1897 were the prototypes of §§ 2196, 2210, and 2211, Comp. Laws 1913. See Laws 1890, chapter 132, §§ 75, 88 and 89; Laws 1897, chapter 126, §§ 81, 93 and 94. Since the re-enactment in 1897 these sections have remained part of the laws of this state without change.

The obvious purpose of §§ 2210 and 2211 was to encourage the payment of taxes and preserve to either a tenant or mortgagee who paid taxes a lien for the amount expended. The purpose of § 2196 was to extend the right to purchase at a tax sale to persons who under then existing laws were inhibited from purchasing. In a word, the purpose of §§ 2210 and 2211 was to increase the number of potential taxpayers, and the object of § 2196 was to increase the number of potential bidders at tax sales. Other provisions of chapter 126, Laws 1897, safeguarded the rights of the purchasers at tax sales to a greater degree than did any prior legislative enactment. Thus under one provision (§ 88) a purchaser at a tax sale became entitled to a refund of the amount paid with interest at 7 per cent in all cases where the sale was subsequently adjudged to be void; in cases whereby through the mistake or wrongful act of the county treasurer or auditor land was sold upon which no taxes are due, and in cases where taxes are paid on lands not subject to taxation or on lands where subsequent to payment the entry is cancelled. The entire act of 1897 indicates a somewhat studied effort on the part of the legislature to encourage not only the payment of taxes but the purchase at tax sales. The provisions of the act of 1890 looking to this end which had been omitted in the Revised Code of 1895 were either re-enacted in their original form or changed in such manner as to broaden their scope and permit and encourage the payment of taxes or purchase at tax sales to a greater extent than before. And anyone familiar with the conditions existing in the state at the time of the enactment of this legislation realizes there was ample reason for the legislative action. In a large number of counties there were practically no private bidders at tax sales, and lands on which taxes were in default were frequently, if not generally, bid in by the county with the result that needed moneys were not paid into the public treasury. The legislature found itself confronted with a condition and not a theory and chapter 126, Laws 1897, bears ample evidence that the lawmakers endeavored to meet the condition which confronted them.

In my opinion § 2211 imposes no obligation upon a mortgagee to pay taxes on the mortgaged realty; but merely grants permission to the mortgagee to make such payment (Williams v. Campion, 53 N. D. 456, 206 N. W. 703) and gives to him "an additional lien on the land"

for the amount expended in the payment of taxes. In the absence of such statute more or less uncertainty would have existed as to the rights of a mortgagee paying taxes and this was especially so where the taxes were invalid in whole or in part. Rushton v. Burke, 6 Dak. 478, 43 N. W. 815.

Section 2211 not only definitely settles the right of a mortgagee to pay taxes, and to redeem from a tax sale, but definitely establishes the right to an additional lien on the land for the amount paid as evidenced by "the receipt of the county treasurer or the certificate of redemption, as the case may be."

Section 2196 prescribes the qualifications of a purchaser at a tax sale. It says:

"*Any person* except county auditors, county treasurers, and each of their deputies and clerks, may become the purchaser at such sale."

If the only purpose of this section had been to inhibit county auditors, county treasurers and their deputies and clerks from becoming purchasers the lawmakers would doubtless have used apt language to indicate this intention. The section, however, says that "*any person*" (except those specifically enumerated) may become a purchaser at a tax sale. The next paragraph specifically recognizes that even the owner may become such purchaser, and the concluding provision of the section is that:

"Nothing herein contained shall be so construed as to prevent any officer or his deputy or clerk from becoming the purchaser at such sale of any lands of which he may be the owner, or upon which he may have a lien." In other words, the statute says that even county auditors and county treasurers and their deputies and clerks may purchase lands which they own, or on which they hold liens.

That § 2196 was intended to effect a fundamental change in the then existing law, can hardly be questioned. Under the rule then established in this jurisdiction, and by the great weight of authority elsewhere, the owner of land was not a qualified purchaser at a tax sale. Wambole v. Foote, 2 Dak. 1, 2 N. W. 239; 37 Cyc. 1346. The owner owing a duty to pay taxes on his property, the rule had been established that he could not turn his neglect of duty to an advantage, purchase his own property at the tax sale and thereby cut off the liens or interests of others. There can be no question that § 2196 was in-

tended to change this rule and enable the owner to purchase land at a tax sale; and even though the implied exception is read into the statute (which apparently the majority opinion does), that the sale does not have the effect of passing to him any right, title, interest in, or lien or incumbrance upon such property which the owner so purchasing was legally or equitably bound to protect against the sale or the taxes for which the sale was made, still the statute would recognize the right of the owner of realty to become a purchaser at the sale of his own property; and that the effect of the sale would be to cut off every right, title, interest, lien or incumbrance which the owner was not legally or equitably bound to protect. The statute specifically says that *"any person"* (except those specifically enumerated) may purchase. It does not purport to qualify or restrict in any manner the right of an encumbrancer or lien holder to make purchase. So far as the statute is concerned the holder of a mortgage or other lien stands on the same footing as a perfect stranger to the title. The concluding paragraph of the section is an explicit recognition that a lien holder may purchase, as that permits even the county auditor, county treasurer or their deputies or clerks to purchase land upon which they hold a lien.

In the majority opinion considerable reliance is placed upon the decision of this court in Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855. That case involved a controversy between a mortgagor and a mortgagee. The mortgage in terms permitted the mortgagee to pay taxes assessed against the land, and add the amount to his claim. The mortgagee did not pay the taxes but obtained tax deeds. That decision makes no reference to §§ 2196 or 2211. And there was good reason why no such reference was made as the tax deeds involved long antedated the enactment of these provisions. (11 N. D. 50.) It seems to me that the decision in Finlayson v. Peterson, supra, is no authority upon the question whether a junior mortgagee may purchase at a tax sale and assert rights as such purchaser against the senior mortgagee, under §§ 2196 and 2211 supra.

In the instant case, however, the junior mortgagee did not purchase at a tax sale. A stranger to all parties claiming title to or encumbrances upon the land had purchased at the tax sale and acquired a tax certificate which constituted a valid contract conferring upon the holder thereof certain specific contract rights (Fisher v. Betts, 12 N. D. 197,

96 N. W. 132), and which contract by the express terms thereof was assignable. Comp. Laws 1913, § 2192. This contract constituted a valid lien·upon the premises prior to all mortgages and was enforcible in the manner provided by the statute. The junior mortgagee purchased this contract and it was assigned to him in the manner prescribed by law.

It seems to be conceded that the junior mortgagee was under no legal obligation to pay the taxes or to redeem from the tax sale, and such indeed is the rule established by the great weight of authority. And I am unable to see that the junior mortgagee occupied any relation to the land, or to the tax, or was charged with any duty, or occupied any position of trust or confidence toward the senior mortgagee which would preclude him from purchasing the tax sale certificate and exercising the rights conferred by law upon the holder thereof. The senior mortgagee could not possibly have been misled or prejudiced by the act of the junior mortgagee. There was no concealment, no collusion, no breach of faith. The senior mortgagee was charged with notice that the land was subject to taxation; that if the taxes were not paid the land would be sold at tax sale and if no redemption was made the holder of the tax sale certificate would be entitled to a tax deed for the land free and clear of the lien of his mortgage. The senior mortgagee was not even charged with constructive notice of the existence of the junior mortgage. Sarles v. McGee, 1 N. D. 364, 26 Am. St. Rep. 633, 48 N. W. 231. If it had actual knowledge thereof it also knew that the junior mortgagee owed no duty to pay the taxes or to redeem from the tax sale.

In my opinion no valid reason exists under the laws of this state why a junior mortgagee may not purchase a tax sale certificate and enforce the same in the manner provided by law even as against a senior mortgagee.

The foregoing was written as a dissent from the principal opinion prepared by Mr.·Chief Justice Nuessle. Since that decision the case has received further consideration upon a petition for re-hearing; and in a supplemental opinion in denial of the petition the majority members hold that the legislative assembly in enacting § 2196 Comp. Laws 1913, through inadvertence omitted a certain clause. Inasmuch as the foregoing dissenting opinion assumed that the original opinion of the

majority construed the section as though it contained the clause which the majority members say was inadvertently omitted, I deem it unnecessary to add anything to what is said in the dissenting opinion further than to say that I agree with my associates that the clause alluded to in the supplemental opinion on petition for rehearing was inadvertently omitted from § 2196. The addition of the clause does not, however, affect the application of section 2196 in the instant case or detract from what is said in the foregoing dissent as regards the purpose and effect of this section. The clause in question confessedly applies only to the owner of the land and limits his rights as a purchaser at a tax sale. This case does not involve purchase at a tax sale by the owner, nor does it involve the purchase by one who was under any legal duty to pay taxes and to protect the holder of a mortgage against the tax sale or the taxes for which the sale was made.