In the Matter of the ESTATE of Albert F. HANSEN, Deceased.

STATE BANK OF TOWNER, Plaintiff and Appellee.

v.

Albert F. HANSEN, deceased, and Dianna M. Hansen, as the Personal Representative of the Estate of Albert F. Hansen, deceased, Defendants and Appellants.

James H. WILLIAMS and Connie D. Williams, Plaintiffs and Appellees,

v.

Dianna M. HANSEN a/k/a Dianna M. Hansen, individually and as Personal Representative of the Estate of Albert F. Hansen, deceased, Defendant and Appellant,

Steve Rolla; State Bank of Towner; G.W. Peterson d/b/a Northwest Collection Agency; the heirs, devisees and assigns of any Defendants deceased; and the assigns or successors in interest of any Defendants; and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants.

The STATE of North Dakota doing business as the Bank of North Dakota acting by and through the Board of University and School Lands, Plaintiff and Appellee,

v.

Dianna M. HANSEN, Individually and as Personal Representative of the Estate of Albert F. Hansen, deceased, Defendant and Appellant,

State Bank of Towner, Defendant and Appellee,

and

G.W. Peterson, Defendant.

Civ. Nos. 890232, 890224 and 890248.

Supreme Court of North Dakota.

July 3, 1990.

Richard P. Olson (argued), Olson, Sturdevant & Burns, Minot, for plaintiff, defendant and appellee State Bank of Towner and plaintiffs and appellees James H. Williams and Connie D. Williams.

Donald A. Anderson, Sp. Asst. Atty. Gen., Minot, for plaintiff and appellee Bank of North Dakota. Submitted on brief.

Thomas M. Disselhorst (argued), Disselhorst Law Office, Bismarck, for defendants and appellants.

MESCHKE, Justice.

These three cases stem from mortgage and tax foreclosures against the same real property once owned by Albert F. Hansen, now deceased, and Dianna M. Hansen. In *State Bank of Towner v. Hansen,* Hansen appeals from the trial court's denial of her NDRCivP 60(b) motion for relief from a judgment foreclosing the junior mortgage held by the State Bank of Towner and from the resulting foreclosure sale. In *Williams v. Hansen,* Hansen appeals from a summary judgment quieting title to the property in James H. Williams and Connie D. Williams based on a tax deed. In *State v. Hansen,* Hansen appeals from orders designating the sequence of sale and confirming the sale to foreclose the senior mortgage held by the Bank of North Dakota. Because these cases are interrelated, we resolve them in one opinion. We affirm each decision.

*Facts*

In February 1975, Albert Hansen borrowed $53,000 from the Bank of North Dakota [BND] and, to secure the debt, mortgaged 1,040 acres of property in McKenzie County. The mortgage covered both the surface and minerals. In July 1981, Albert and Dianna Hansen gave the State Bank of Towner [SBT] a $200,000 promissory note in settlement of pending legal actions. *See State Bank of Towner v. Hansen,* 302 N.W.2d 760 (N.D.1981). To secure this debt, the Hansens gave SBT a second mortgage on the surface of the property earlier mortgaged to BND. The SBT mortgage expressly provided that the minerals "shall not be subject to this mortgage." The Hansens defaulted on the debt to SBT in November 1984.

In December 1984, James H. Williams, the president of SBT, and his wife, Connie D. Williams [together referred to as Williams], purchased the property from the McKenzie County Auditor for 1983 delinquent taxes and received tax sale certificates. In February 1985, SBT sued the Hansens to foreclose its mortgage. The Hansens filed for bankruptcy and the foreclosure action was stayed. *See In re Hansen,* 77 B.R. 722 (D.N.D.1987). Meanwhile, Williams paid delinquent taxes on the property for 1984, 1985, and 1986, and received subsequent tax sale certificates.

Albert Hansen died in 1987, the bankruptcy was dismissed, and Albert's estate was substituted as a defendant in SBT's foreclosure. A trial resulted in determination of an indebtedness of $223,365.55 and a judgment of foreclosure on January 12, 1988. The foreclosure sale took place on February 16, 1988. Dianna Hansen appeared at the sale and requested that the sheriff sell the property in separate parcels. Instead, the property was sold in one parcel to SBT for $180,000. A sheriff's

certificate was issued to SBT and was recorded on February 17, 1988. The trial court signed the order confirming the foreclosure sale on February 29, 1988, and Hansen was served with the order on March 3, 1988.

In May 1988, the McKenzie County Auditor issued nine notices of expiration of time for redemption from the tax sale and served them on Hansen. The notices informed Hansen that the time for redemption would expire 90 days after service and stated the amount needed to redeem. Hansen did not redeem. On September 12, 1988, the County Auditor issued a corrected auditor's tax deed conveying the property to Williams.

BND sued to foreclose its mortgage on the Hansen property in August 1988. In January 1989, Williams sued to quiet their tax title as the owners in fee based on their auditor's tax deed. In February 1989, shortly before the time to redeem ended in SBT's foreclosure, Hansen moved under NDRCivP 60(b) for relief from that foreclosure judgment and from that February 1988 foreclosure sale. But Hansen did not redeem from the SBT foreclosure and a sheriff's deed was issued to SBT on February 17, 1989.

On March 7, 1989, BND obtained a judgment of foreclosure against Hansen for $73,252.70. Hansen then moved in the BND foreclosure for an order directing that the surface be sold first in seven separate parcels and that the minerals be sold afterward in the same sequence. The trial court ruled that the minerals should be sold

separately from the surface, but that in order to properly protect SBT as the junior lienholder as well as the homestead rights of Hansen if she wished to redeem, the minerals would be sold first in the sequence designated by Hansen and the surface would be sold second in the same sequence. The BND foreclosure sale took place on April 28, 1989, and the minerals were sold for $74,680 to James Williams, Walter F. Gehrts, Kenneth Henry, and Raymond Sharkey, original "owner/directors" of SBT.

In Williams's quiet title action, the trial court granted summary judgment on May 4, 1989, quieting title in Williams "except for a senior mortgage to [BND]." In the BND foreclosure action, a sheriff's certificate for the minerals was issued to Williams, Gehrts, Henry, and Sharkey, and, on May 15, 1989, an order confirmed that foreclosure sale to them. In the SBT foreclosure action, on May 19, 1989, the trial court denied Hansen's Rule 60(b) motion for relief from the foreclosure judgment and sale. Hansen appealed the three adverse decisions.

### State Bank of Towner v. Hansen

■ Hansen asserts that, in the SBT foreclosure action, the trial court erred in denying her NDRCivP 60(b) motion for relief from the foreclosure judgment and sale because the sheriff refused her request to sell the land in separate parcels. Under NDCC 28–23–07 and 1987 N.D.Sess.Laws Ch. 194,[1] Hansen argued that the sheriff was bound to honor her request.

---

1. At the time of the foreclosure, NDCC 28–23–07 said:

*Time and manner of sale.*—All sales of property under execution must be made at public auction to the highest bidder, between the hours of nine o'clock a.m. and four o'clock p.m. After sufficient property has been sold to satisfy the execution no more shall be sold. No sheriff or other officer, nor his deputy, holding the execution or making the sale of property, either personal or real, shall become a purchaser or be interested directly or indirectly in any purchase at such sale, and every purchase so made shall be considered fraudulent and void. When the sale is of personal property capable of manual delivery, it must be within view of those who attend the

sale and must be sold in such parcels as are likely to bring the highest price, and when the sale is of real property consisting of several known lots or parcels they must be sold separately. *The judgment debtor, if present at the sale, may direct the order in which property, real or personal, shall be sold, when such property consists of several known lots or parcels or of articles which can be sold to advantage separately, and the sheriff or other officer must follow such directions.*

1987 N.D.Sess.Laws Ch. 194 was set forth, and its relationship with NDCC 28–23–07 was discussed, in *Production Credit Ass'n v. Henderson,* 429 N.W.2d 421 (N.D.1988). In 1989, Chapter 194 was repealed and Section 28–23–07 was temporarily amended effective April 11, 1989

With her motion, Hansen presented affidavits showing that she and her representatives attended the foreclosure sale and in writing requested the sheriff to sell the property in seven separate parcels in a specified sequence "pursuant to authority given in 28-23-07 N.D.C.C." The sheriff denied the request and sold the property as directed by the foreclosure judgment. The judgment said, "since the premises constitute and were mortgaged as one entire tract, that the same be sold as one parcel and without division." The trial court denied Hansen's Rule 60(b) motion, concluding, among other things, that her motion was untimely, that her allegations supplied no reason for relief from a final and unappealed judgment, and that to grant Hansen's request for relief "would substantially prejudice [SBT] and would be inequitable under these circumstances."

■■■ Hansen's motion relied on four of the six reasons for which relief is authorized by NDRCivP 60(b), (i) [mistake, inadvertence, surprise, or excusable neglect]; (iii) [fraud, misrepresentation, or other misconduct of an adverse party]; (iv) [the judgment is void]; and (vi) [any other reason justifying relief from the operation of the judgment]. Unless a judgment is void for lack of jurisdiction under Rule 60(b)(iv), a trial court must exercise sound discretion in deciding whether the movant's reasons are sufficient to set aside a final judgment or order. *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794 (N.D.1986). The movant has the burden of establishing sufficient grounds for disturbing the finality of the judgment. *Avco Financial Services v. Schroeder*, 318 N.W.2d 910, 912 (N.D.1982). For the most part, a trial court's decision on a Rule 60(b) motion will not be disturbed on appeal absent an abuse of discretion.

■■■ We reject Hansen's argument that the foreclosure judgment and sale are void because the sheriff refused to sell the property in separate parcels and in the sequence that she requested, allegedly in violation of NDCC 28–23–07 and 1987 N.D. Sess.Laws Ch. 194. A judgment is void if

the court lacked subject matter jurisdiction over the action or if the court lacked personal jurisdiction over the parties. But a contention that the trial court misapplied a statute generally implicates neither subject matter nor personal jurisdiction. *Northwestern Nat'l Life Ins. Co. v. Delzer*, 425 N.W.2d 365, 368 (N.D.1988); *Production Credit Ass'n v. Dobrovolny*, 415 N.W.2d 489, 491 (N.D.1987); *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d at 794. The "subject matter jurisdiction of a district court is not determined by whether or not it correctly applied a statute to a particular cause of action because, to hold otherwise, would vest subject matter jurisdiction in a district court subject to divestment upon an erroneous ruling." *Production Credit Ass'n v. Dobrovolny*, 415 N.W.2d at 491. An error of law in the proceedings may furnish grounds for appeal but it does not invalidate the judgment.

In *Northwestern Nat'l Life Ins. Co. v. Delzer*, 425 N.W.2d at 368, we held that strict compliance with the notice before foreclosure required by NDCC 32–19 is not a prerequisite to a district court's exercise of jurisdiction in a foreclosure and that a failure to so comply did not make a judgment void and vulnerable under Rule 60(b). In *Production Credit Ass'n v. Dobrovolny*, 415 N.W.2d at 492, we similarly held that an allegation that a statutory redemptioner could not lawfully buy a sheriff's certificate from the purchaser at a foreclosure sale, even if legally correct, did not mandate Rule 60(b) relief. We also held in *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d at 794, that a judgment is not void under Rule 60(b) merely because the creditor allegedly failed to comply with the anti-deficiency judgment statutes. These decisions illustrate that a legal error alone does not make a judgment void.

Like the statutes arguably misapplied in these illustrative decisions, NDCC 28–23–07 and 1987 N.D.Sess.Laws Ch. 194 do not display an intent to limit a court's power in a jurisdictional sense. We conclude that these manner-of-sale laws, even if violated,

through June 30, 1991. *See* 1989 N.D.Sess.Laws Ch. 394.

do not supply a basis for declaring a foreclosure judgment and sale void under Rule 60(b)(iv).

■ Every Rule 60(b) motion must be made within a "reasonable time." A Rule 60(b) motion for reasons (i), (ii), and (iii) must be made not more than one year after notice that the judgment or order was entered. "Thus a party is not given an absolute year in which to make his motion for relief.... Laches or undue delay will thus preclude a party from relief, although the motion is made within the maximum time." 7 Moore's Federal Practice ¶ 60.22[4], at pp. 60-194-60-195 (1990) [Footnotes omitted]. Although Hansen moved for Rule 60(b) relief within one year, we believe the trial court acted within its discretion in determining that Hansen's motion was untimely.

The complaint in this foreclosure, begun in 1985, specifically requested that the mortgaged property "be sold in one parcel and without division...." Hansen did not oppose this request in her answer, amended answer, or at the December 1987 trial. SBT prepared the findings, conclusions, order for judgment, and judgment, and, at the court's request, submitted a copy of the proposed documents to Hansen's counsel on January 8, 1988. The findings and judgment specifically directed that the property "be sold as one parcel and without division." Hansen did not object to the documents, judgment was entered on January 12, 1988, and notice of entry of judgment was served on Hansen on February 19, 1988.

Immediately after the foreclosure sale on February 16, 1988, Hansen's counsel wrote to SBT's counsel on February 17, 1988, raising the same objections to the sale that he raised in the Rule 60(b) motion a year later. The trial court entered an order confirming the foreclosure sale on February 29, 1988, and it was served on Hansen on March 3, 1988. Despite Hansen's immediate knowledge of the alleged problems with the foreclosure sale, Hansen did not appeal from the foreclosure judgment or the order confirming the sale. Instead, she waited to pursue Rule 60(b) relief until February 15, 1989, the day before the redemption period expired.

Hansen has not explained this delay in seeking relief. She has not presented any persuasive arguments for disturbing the finality of the unappealed judgment and the order confirming sale. Under these circumstances, we believe that the trial court acted within its discretion in denying Hansen's Rule 60(b) motion.

Accordingly, we affirm the trial court's denial of Hansen's Rule 60(b) motion for relief from SBT's foreclosure judgment and sale.

### Williams v. Hansen

Although SBT's mortgage covered only the surface of Hansen's property, the real estate tax assessments were made against both the surface and the minerals, together, owned by the Hansens. *See Payne v. A.M. Fruh Company*, 98 N.W.2d 27 (N.D. 1959); *Northern Pacific Railway Co. v. Advance Realty Co.*, 78 N.W.2d 705, 718 (N.D.1956); *Bilby v. Wire*, 77 N.W.2d 882, 887 (N.D.1956). Williams, the president of SBT, paid the delinquent taxes on the property for 1983, 1984, 1985, and 1986 and received tax sale certificates. After Hansen failed to redeem from the tax sale, the County Auditor issued Williams a tax deed for the property in September 1988.

Williams sued to quiet title as the owner in fee based on the tax deed. Hansen alleged in her answer that the tax deed was void because of fraud by Williams. Hansen asserted that fraud was committed when Williams failed to "identify himself as the President and a duly authorized officer of [SBT] when he purchased the tax sale certificates" from the county. According to Hansen, "Williams, or anyone acting in privity with him, acting as an individual, cannot gain any more by purchase of the land for back taxes owed than could be gained by ... Williams acting in his capacity as President of [SBT] which, under [NDCC 57-45-02], is merely [an] additional lien against the property."

Williams moved for summary judgment. On the claim of fraud, James H. Williams responded by affidavit that Hansen's debt

to SBT began with a debt to the former Pioneer State Bank, which was placed under state court receivership. Williams said that he was "a member of a group who received a new charter ... and as a part of that process assumed the deposit responsibilities of former Pioneer State Bank and also purchased a number of the assets and loans from the former Pioneer State Bank." Williams said that in order to receive Federal Deposit Insurance, "Marquette Bank of Minneapolis transferred into [SBT] capital in exchange for pledge of a group of substandard loans and the pledge of personal liability of the owner/directors at that time who were myself, Walter Gertz, Raymond Sharkey, Burton Hutton, and Kenneth Henry." According to Williams, since that time the other substandard loans have been repaid and "the credit line with Marquette Bank has been reduced until the only remaining loan in that category is the loan" to Hansen. Williams also asserted that he and his wife purchased the tax certificates "with our personal funds" and that any net proceeds received through either SBT's foreclosure action or through the tax sale "will be remitted to Marquette Bank."

The trial court granted summary judgment to Williams quieting their tax title to the property subject only to the BND mortgage.[2] Hansen appealed.

■ Summary judgment is proper when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Production Credit Ass'n of Fargo v. Ista,*

451 N.W.2d 118, 120 (N.D.1990). Even if factual disputes exist, summary judgment is appropriate when resolution of those factual disputes would not change the result. *Russell v. Bank of Kirkwood Plaza,* 386 N.W.2d 892, 897 (N.D.1986). We conclude that any factual disputes would not change this result.

■ Hansen's argument to invalidate Williams's tax title is premised solely upon a statute which authorizes a mortgagee to pay the mortgagor's delinquent real estate taxes and to add that amount to the lien of the mortgage. NDCC 57-45-02 says:

> *Taxes paid by mortgagees or others having liens.* Any person who has a lien by mortgage or otherwise upon any real property that has been sold for taxes or on which the taxes have not been paid, may redeem from such sale, or may pay such taxes and the interest, penalty, and costs thereon, and the receipt of the county treasurer or the certificate of redemption, as the case may be, shall constitute an additional lien on such land to the amount therein stated. The amount so paid and the interest thereon at the rate specified in the mortgage or other instrument, shall be collected with, as part of, and in the same manner as, the amount secured by the original lien.

This statute is obviously intended to protect the mortgagee from a loss of security for the debt through superior tax liens if the mortgagor fails to pay taxes.

Hansen asserts that Williams was so closely connected to SBT and the Hansen mortgage that Williams was acting on behalf of SBT when he purchased the tax sale certificates and, therefore, Williams quali-

---

**2.** NDCC 57-27-05 says:

> *Tax deed to be issued.* At the expiration of the period of redemption, and after the filing of the proof of service of the notice of expiration of such period, the county auditor, if no redemption has been made, on surrender of the certificate of tax sale to him, shall execute to the owner of the certificate, his heirs and assigns, in the name of the state, a deed of the land remaining unredeemed, which shall vest in the said certificate owner, his heirs and assigns, an absolute estate in fee simple in such lands, *subject to the claims of the state* or other taxing districts *on account of* taxes or

other *liens or encumbrances,* including installments of special assessments certified or to be certified to the county auditor or which may become due subsequent to the time of the service of the notice of expiration of the period of redemption. Such deed shall be executed by the county auditor under his hand and seal. Such deed shall be prima facie evidence of the truth of all facts therein recited and of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed. (emphasis supplied).

fies as a "person who has a lien by mortgage or otherwise" upon the Hansen property. Because someone "who owes a duty to pay taxes on property cannot by omitting to do so purchase at a sale of the property for the nonpayment and thereby strengthen his title" [*Baird v. Fischer*, 57 N.D. 167, 220 N.W. 892 Syllabus 1 (1928)], Hansen asserts that Williams cannot acquire a tax title to the property. Instead, Hansen contends, under Section 57–45–02, the amount Williams paid for the tax sale certificates must be treated as an additional amount required for redemption from the SBT foreclosure action.

Hansen's reliance on NDCC 57–45–02 as the premise for invalidating Williams's tax deed is, under these circumstances, misplaced. Hansen seeks to use the statute to have the amount paid for taxes by Williams treated as an additional lien to be added to the amount required to redeem from the SBT foreclosure. However, for its implementation, NDCC 57–45–02 expressly requires the existence of a "lien by mortgage or otherwise upon ... real property". The vitality of Hansen's argument therefore rests, at least, upon the continuing existence of Hansen's right to redeem from the SBT foreclosure.

But Hansen made no effort to redeem from the SBT foreclosure. That redemption period expired in February 1989. We have affirmed the trial court's refusal to reopen that foreclosure judgment and to set aside the foreclosure sale in *State Bank of Towner v. Hansen*. Hansen no longer has a right to redeem from the SBT foreclosure, nor has she tendered redemption either from the foreclosure or from the tax sale. Hansen also has not tendered to the court the amount of delinquent and unpaid taxes on the property as required by NDCC 57–45–10.[3]

Without a right to redeem and without any effort to redeem, Hansen's reliance on NDCC 57–45–02 to invalidate Williams's tax title is unavailing. *See Regstad v. Steffes*, 448 N.W.2d 203, 206 (N.D.1989) [a former owner of tax-forfeited property "has standing to challenge a tax-based title *by asserting a statutory right to redeem or repurchase the property*" (emphasis added)]; *Baird v. Fischer*, 220 N.W. at 895 [first mortgagee must reimburse a second mortgagee for the cost of purchasing a tax sale certificate to forestall the tax title claimed by the second mortgagee]. We therefore conclude that the trial court properly granted summary judgment to Williams quieting their title to the property subject to the BND mortgage. Accordingly, we affirm the summary judgment.

### *State v. Hansen*

BND began foreclosure of its mortgage in August 1988 when Hansen was indebted to it for more than $70,000. The BND mortgage covered both the minerals and the surface of the Hansen property. In its answer to the BND complaint, SBT requested that BND marshall its security under NDCC 13–01–04 and 35–01–15 and sell the minerals first at the foreclosure sale because SBT's junior mortgage covered only the surface. Hansen answered and requested that the surface be sold first in seven separate parcels and that the minerals be sold second in the same sequence. BND objected and argued that the minerals could not be sold separately from the surface.

The trial court ruled that the minerals could be sold separately from the surface and ordered that the minerals be sold before the surface, but in separate parcels and in the sequence designated by Hansen. At the foreclosure sale on April 28, 1989, the minerals were sold to Williams, Walter

---

**3.** NDCC 57–45–10 says:

*Tender of taxes.* Whenever any action is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the court shall not proceed with the trial of such action until the party assailing the validity of such deed, within the time required by the court, shall deposit with the clerk thereof for the benefit of the county should the deed be held invalid, the amount of all delinquent and unpaid taxes on said property, including penalty and interest, plus any taxes paid thereon by the purchaser from the county. Should said action be determined adversely to the purchaser from the county it shall repay to him any moneys received by the county on said purchase.

F. Gehrts, Kenneth Henry, and Raymond Sharkey for a total of $74,680. Because that amount equaled the foreclosure judgment, BND was not aggrieved and did not appeal. Hansen appealed, however, urging that the trial court erred in ordering the minerals sold before the surface. Hansen's standing to question the BND foreclosure sale is doubtful.

When Hansen failed to redeem from the SBT foreclosure, a sheriff's deed was issued to SBT on February 17, 1989. A sheriff's deed is "sufficient evidence of the legality of the sale and the proceedings therein, until the contrary is proved" [NDCC 28–24–14], and when a sheriff's deed is duly acknowledged as required by law it is prima facie evidence of the grantee's claim to the property. *Zimmerman v. Boynton*, 59 N.D. 112, 229 N.W. 3 (1930). We have affirmed the trial court's refusal to reopen this foreclosure judgment and to set aside this foreclosure sale in *State Bank of Towner v. Hansen*. Therefore, Hansen no longer had any equity of redemption in the surface of the property when the BND foreclosure sale took place.

Likewise, when Hansen failed to redeem from the tax sale, Williams was issued a tax deed in September 1988. A tax deed, "valid upon its face, creates a presumptive title in the grantee to the entire estate in the land upon which the taxes for which the land was sold were a lien and ... such presumption of title continues in effect until it has been overcome by the affirmative action in court, by suit or counterclaim on the part of a person who has a sufficient interest to challenge the title." *Payne v. A.M. Fruh Company*, 98 N.W.2d at 31; NDCC 57–27–05. We have affirmed the summary judgment granted to Williams in their quiet title action upholding the validity of their tax deed in *Williams v. Hansen*. Therefore, Hansen no longer had any equity of redemption in either the surface or the minerals of the property when the BND foreclosure sale took place.

Because of the valid title in the holders of the sheriff's deed and of the tax deed, Hansen no longer had any title to the property at the time of BND's foreclosure sale

in April 1989. Therefore, it is doubtful that Hansen had standing to challenge any aspect of BND's foreclosure sale.

If Hansen's contingent interests pending the first two appeals gave her sufficient standing to challenge the BND foreclosure sale, we conclude that the trial court properly marshaled the mortgaged property for the protection of SBT as a junior lienholder in this case.

The rules for marshaling mortgaged property to pay distinct debts are codified in this state. NDCC 13–01–04 sets forth the basic principle:

> *Marshaling funds—Rights of creditors.* When a creditor is entitled to resort to each of several funds for the satisfaction of his claim and another person has an interest in, or is entitled as a creditor to resort to, some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim so far as it can be done without impairing the right of the former to complete satisfaction and without doing injustice to third persons.

The pertinent part of NDCC 35–01–15 is to the same effect:

> *Order of resort for payment—Marshaling securities.* When a person has a lien upon several things and other persons have subordinate liens upon or interests in some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself or of injustice to other persons, on the demand of any party interested, must resort to the property in the following order:
>
> 1. To the things upon which he has an exclusive lien.

These enactments codify the long-recognized equitable duty owed by a senior lienholder to a junior lienholder. *See Aberle v. Merkel*, 70 N.D. 89, 291 N.W. 913, 918 (1940); *Union Nat'l Bank v. Milburn & Stoddard Co.*, 7 N.D. 201, 73 N.W. 527 Syllabus 4 (1897). The principle applies here.

Assuming that sale of the minerals separately from the surface was correct, these marshaling statutes entitled SBT to have the minerals, on which it had no lien, sold before the surface if it could be done without risk of loss to BND or injustice to Hansen. Hansen and SBT agreed that the surface and minerals should be sold separately and do not challenge this part of the decision on appeal.

The trial court partially granted Hansen's request as to the sequence of the sale of the parcels but, contrary to her request, ordered that the minerals be sold before the surface. Hansen asserts that this violated her right to designate the sequence of sale of the parcels authorized by 1987 N.D. Sess.Laws Ch. 194 and NDCC 28–23–07. See Footnote 1, *supra*. Section 5 of 1987 N.D.Sess. Laws Ch. 194 said that "[a]t the foreclosure sale, or in writing at least ten days prior to sale, the debtor may direct the division of the property into known lots or parcels and may direct the order in which the lots or parcels and the remaining property, or other property may be sold, as provided by section 28–23–07." NDCC 28–23–07 says that the "debtor, if present at the sale, may direct the order in which property, real or personal, shall be sold, when such property consists of several known lots or parcels or of articles which can be sold to advantage separately, and the sheriff or other officer must follow such directions."

These two statutory rights of the debtor to designate the sequence of sale "of known lots or parcels" do not differ substantially. *See Production Credit Ass'n v. Henderson*, 429 N.W.2d 421, 425 (N.D.1988). The purpose of these laws is "to give the [debtor] an opportunity to redeem from any, or all parcels or lots, to sell only so much of the property as is necessary to pay the debt, and to get the highest possible price for the land sold." *Figenskau v. Wiege*, 56 N.D. 768, 219 N.W. 471, 472 (1928). They are also intended to assist a debtor in protecting homestead rights. *See First Security Bank, Underwood, N.D. v. Enyart*, 439 N.W.2d 801, 806–807 (N.D.1989). Absent any other

rights, these provisions authorized Hansen to direct that the surface be sold before the minerals if it could be sold to advantage separately.

Neither Hansen nor SBT has cited any precedent assessing the interplay between a marshaling statute and a like manner-of-sale statute, and we have not discovered any. However, "when two statutes relating to the same subject matter appear to be in conflict, they should, whenever possible, be construed to give effect to both if such can be done without doing violence to either." *O'Fallon v. Pollard*, 427 N.W.2d 809, 811 (N.D.1988); NDCC 1–02–07. Inconsistent statutes should be construed, if possible, to give effect to both.

This court has indicated that the manner-of-sale statute is not paramount in all events. In *Michael v. Grady*, 52 N.D. 740, 204 N.W. 182, 184 (1925), the court said that not every sale where property consisting of several known lots or parcels is sold en masse is subject to attack, "particularly in those cases where the several parcels are first offered separately but no bids are received thereon." Likewise we do not believe the Legislature intended that the debtor's right to designate the sequence of sale of parcels invariably overrides and defeats a junior lienholder's right to invoke equitable principles of marshaling.

The marshaling statutes and the manner-of-sale statutes are both designed to achieve equitable results for their intended beneficiaries. Where there exists more than one lien on the property, the trial court should balance the competing equities of the junior lienholder and of the debtor in settling the sequence of sale of parcels. We believe this approach harmonizes these provisions.

The trial court in this case properly weighed the equities in directing that the minerals be sold before the surface, in separate parcels and in the sequence requested by Hansen. Hansen was not injured by sale of the minerals first to pay the debt inasmuch as both the surface and minerals secured the BND mortgage. Hansen's attempt to free the minerals from the BND

mortgage and make the junior lienholder, SBT, entirely subordinate to the BND debt would have placed SBT in a position nearly comparable to an unsecured creditor.

We are aware of statements in *Douglas County State Bank v. Steele*, 54 N.D. 686, 210 N.W. 657, 659 (1926), to the effect that, under the marshaling statutes, a homestead claimant could require a senior lienholder "to resort first to the nonhomestead quarter, even though to have done so would have wholly defeated the rights of the junior lienholder upon that quarter." However, Hansen's assertion that her homestead rights were violated is unpersuasive. In this case, we agree with the trial court that Hansen's homestead rights were adequately protected. Because the sale of minerals satisfied the BND mortgage, the surface was not sold and no redemption from the BND foreclosure was required for the mortgagors to retain the surface of the homestead parcel. Having requested a separate sale of the minerals, Hansen cannot object to the separate sale of the homestead minerals. Hansen did not request that the homestead minerals and the homestead surface be the very last parcels sold to satisfy the debt. If she had any remaining opportunity to redeem, Hansen would be able to separately redeem the homestead mineral parcel since it was sold separately. We conclude that the trial court's directions for the sequence of sale fairly balanced SBT's right to require marshaling and Hansen's right to specify the sequence of sale.

We therefore affirm the trial court's orders directing the sequence of sale and confirming the sheriff's sale.

Accordingly, each of the decisions is affirmed.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.