**William L. VOLK, Plaintiff and Appellant,**

v.

**WISCONSIN MORTGAGE ASSURANCE COMPANY; The Industrial Commission of North Dakota, Acting as the North Dakota Housing Finance Agency, and Superior Mortgage, Inc. (now known as Central Mortgage Corporation), Defendants and Appellees.**

**Civ. No. 900436.**

Supreme Court of North Dakota.

July 31, 1991.

Glen R. Bruhschwein (argued) and Gordon W. Schnell (argued) of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff and appellant.

Eugene F. Buresh (argued) of Freed, Dynes, Reichert, Buresh & Herauf, P.C.,

Dickinson, for defendant and appellee Wisconsin Mortg. Assur. Co.

Kent M. Morrow (argued), Asst. Atty. Gen., Atty. General's Office, Bismarck, for defendant and appellee Indus. Com'n of North Dakota, acting as the North Dakota Housing Finance Agency.

David F. Senn (argued) of Baird & Senn, Dickinson, for defendant and appellee Superior Mortg., Inc.

ERICKSTAD, Chief Justice.

William L. Volk appeals from three district court summary judgments dismissing his action for damages against Wisconsin Mortgage Assurance Company [WMAC], the State Industrial Commission acting as the North Dakota Housing Finance Agency [NDHFA], and Superior Mortgage, Inc. [SMI]. We affirm in part, reverse in part, and remand for further proceedings.

On November 23, 1983, Volk granted SMI a real estate mortgage in exchange for a loan under the North Dakota First–Time Home Buyers' Program. The $63,300 in loan proceeds were used to purchase a home in Dickinson. The mortgage was subject to the provisions of the Short–Term Mortgage Redemption Act, Chapter 32–19.1, N.D.C.C. Pursuant to § 32–19.1–07, N.D.C.C., a mortgagee is not entitled to a deficiency judgment upon foreclosure of a mortgage subject to the provisions of the Act. *See. Dakota Bank and Trust Co. of Fargo v. Funfar*, 443 N.W.2d 289, 292 (N.D.1989); *Mischel v. Austin*, 374 N.W.2d 599, 600 (N.D.1985). Through various assignments, NDHFA obtained an interest in the mortgage while SMI continued to service the mortgage.

Pursuant to the First–Time Home Buyers' Program, Volk was required to pay premiums which were used for the purchase of mortgage insurance from Mortgage Guaranty Insurance Corporation, now known as WMAC, guaranteeing Volk's payment to SMI or its assignee, NDHFA.

Volk defaulted in October 1986. In February 1987 SMI sent Volk a "Legal Notice Pursuant to Mortgage Default" which stated in part that "We (as 'Lender') have the right to pursue a deficiency judgement (sic) against you if the sale of this property fails to satisfy the full debt." Volk offered to give NDHFA a quitclaim deed to the property in lieu of a foreclosure action "so that I wouldn't have to go through the embarrasment (sic) and suffer the damage which a foreclosure action would cause to me."

NDHFA, pursuant to the terms and conditions of the mortgage insurance contract, requested approval from WMAC to accept the deed in lieu, of foreclosure. WMAC refused, but entered into negotiations with Volk and inquired about Volk's financial circumstances. WMAC decided to approve a deed in lieu of foreclosure if Volk would agree to pay $9,200, payable at the rate of $2,000 down plus $300 per month for 24 months to help contribute to the anticipated loss caused by Volk's default. Volk refused to contribute the money to avoid the foreclosure action and NDHFA thereafter commenced foreclosure proceedings against Volk. NDHFA did not seek a deficiency judgment in its foreclosure complaint.

According to Volk, after foreclosure proceedings had begun, he contacted a representative of WMAC

"to find out if they ha[d] agreed to accept the deed, but she advised that she had not yet seen the further financial information she had requested from me which I sent to her on September 2nd. During this conversation she advised me that it was clear to her that I was not sufficiently destitute to qualify to give a deed in lieu, and that such deed would therefore not be accepted unless I would pay a portion of the loss which [NDHFA] would suffer from this loan."

Volk refused to pay the money, and a judgment of foreclosure was entered in February 1989 granting all right, title, and interest in the property to NDHFA.

Volk brought this action for damages in February 1990 alleging that NDHFA, SMI, and WMAC had committed abuse of process and that WMAC had additionally violated the North Dakota Unfair Insurance Practices Act, Chapter 26.1–04, N.D.C.C. The trial court granted three separate sum-

mary judgments against Volk dismissing the actions against each defendant. Volk appealed.

Summary judgment is proper when, after viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Heller v. Production Credit Association of Minot,* 462 N.W.2d 125, 127 (N.D.1990). Even if factual disputes exist, summary judgment is appropriate when resolution of those factual disputes would not change the result. *Matter of Estate of Hansen,* 458 N.W.2d 264, 270 (N.D.1990).

## ABUSE OF PROCESS

We discussed the tort of abuse of process in *Stoner v. Nash Finch, Inc.,* 446 N.W.2d 747, 751 (N.D.1989):

"The tort of abuse of process is described in Restatement (Second) of the Law of Torts § 682 (1976): 'One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.' The essential elements of the tort are discussed in Prosser and Keeton, *The Law of Torts* § 121, at p. 898 (5th ed. 1984):

" 'The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surren-

der of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.' [Footnotes omitted.]"

 In other words, the gist of the tort of abuse of process is the misuse or misapplication of legal process to accomplish an end other than that which the process was designed to accomplish. *Stoner v. Nash Finch, supra; Pow–Bel Construction Corporation v. Gondek,* 291 Minn. 386, 192 N.W.2d 812, 814 (1971). It is the purpose behind the use of the legal process that is controlling. *See Blair v. Maxbass Security Bank,* 44 N.D. 12, 176 N.W. 98, 100 (1919).

 The evidence, viewed in the light most favorable to Volk, reflects that the defendants refused to accept a deed in lieu of foreclosure unless Volk paid $9,200 to absorb a part of the loss caused by Volk's default. Volk characterizes this request for payment as an attempt to coerce or extort a deficiency judgment from him, which is not recoverable under the North Dakota Short–Term Mortgage Redemption Act. *See* § 32–19.1–07, N.D.C.C.; *Dakota Bank and Trust Co. of Fargo v. Funfar, supra.* Indeed, we have said that a deficiency judgment is one of the least favored creatures of the law and we have often recognized the Legislature's avowed public policy against deficiency judgments in real estate litigation. *See First State Bank v. Anderson,* 452 N.W.2d 90, 92 (N.D.1990); *Gust v. Peoples and Enderlin State Bank,* 447 N.W.2d 914, 919 (N.D.1989).

The defendants characterize the proposal that Volk pay the $9,200 as merely an attempt during negotiations to receive consideration for accepting the deed in lieu of foreclosure. The trial court apparently agreed, determining that "Superior was neither threatening nor abusive in offering to negotiate away its right to foreclose in exchange for monetary consideration." The defendants assert that once the negoti-

ations for Volk's contribution to the loss broke down, the foreclosure proceeding was the only proper remedy available to them.

The defendants are correct in their assertion that a mortgagee is ordinarily not required to accept a deed in lieu of a foreclosure proceeding. *See CUNA Mortgage v. Aafedt*, 459 N.W.2d 801, 805 (N.D.1990). However, whether the defendants were legally entitled to use the foreclosure proceeding as a remedy after Volk defaulted is not the dispositive inquiry; rather, the issue is whether the defendants attempted to use the foreclosure proceeding as a vehicle to coerce Volk into paying $9,200 which he was not otherwise required to pay under North Dakota law. *See Pow–Bel Construction Corporation v. Gondek, supra.* We believe the evidence in this case raises a reasonable inference that the defendants attempted to use the foreclosure action as a means of coercing Volk into paying a deficiency judgment which is not allowed under North Dakota law. It is for the trier of fact to determine whether the foreclosure action was brought to coerce Volk into paying a deficiency judgment or whether the action was brought to accomplish the lawful purpose for which it was designed.

NDHFA asserts that summary judgment was nevertheless proper because no action was taken to seek payment after the foreclosure proceeding was initiated. We disagree for two reasons. First, Volk's affidavit indicates that after foreclosure proceedings had begun, payment was demanded in order to qualify for acceptance of a deed in lieu of foreclosure. Second, we have expressly rejected the view that an improper act must occur after process has issued in order to maintain an action for abuse of process. *See Stoner v. Nash Finch, Inc., supra,* 446 N.W.2d at 752.

The defendants have also attempted to shift the blame for any improper acts committed in this case on each other. For instance, NDHFA and SMI point out that they had no other choice but to accept WMAC's directives regarding the foreclosure action. WMAC points out that it cannot be liable for abuse of process because it was not a party to the foreclosure action. However, at the very least, the record in this case permits inferences of agency relationships between the parties. The existence of an agency relationship is ordinarily a question of fact. *Krank v. A.O. Smith Harvestore Products,* 456 N.W.2d 125, 128 (N.D.1990).

The defendants also assert that Volk has failed to show that he suffered any damages because he did not pay the $9,200 requested for acceptance of the deed in lieu of foreclosure. However, an action for abuse of process is recognized "where no property is taken at all and where the attempted extortion was wholly unsuccessful." Prosser and Keeton, *The Law of Torts* § 121, at p. 900 (5th ed. 1984); *see also Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780, 786–787 (1947); *Ledford v. Smith,* 212 N.C. 447, 193 S.E. 722, 723 (1937); *Huggins v. Winn–Dixie Greenville, Inc.,* 249 S.C. 206, 153 S.E.2d 693, 695 (1967). Thus, Volk's refusal to pay the $9,200 for acceptance of the deed in lieu of foreclosure is not fatal to his action for abuse of process.

The defendants assert that summary judgment was proper because the injuries he alleges to have suffered, *i.e.,* damage to his personal reputation, credit rating, financial reputation, unfavorable publicity, embarrassment, humiliation, and ridicule caused by the foreclosure action, would have occurred from any foreclosure action. We disagree. The matter of damages is a question of fact. *E.g., Latendresse v. Latendresse,* 294 N.W.2d 742, 749 (N.D.1980). We believe that whether Volk has suffered harm, if any, from the defendants' alleged improper conduct is a question to be determined by the trier of fact. *See Lang v. Barrios,* 472 N.W.2d 464, 467 (N.D.1991).

Because there exist genuine issues of material fact, we conclude that the trial court erred in granting summary judgment dismissing Volk's abuse of process action against the three defendants.

## UNFAIR INSURANCE PRACTICES ACT

Volk asserts that the trial court erred in dismissing his action against WMAC under the Unfair Insurance Practices Act. He contends that WMAC's decision to not approve a deed in lieu of foreclosure constituted a violation of § 26.1–04–03(9)(a) and (d), N.D.C.C., which provide:

"*26.1–04–03. Unfair methods of competition and unfair or deceptive acts or practices defined.* The following are unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

\* \* \* \* \* \*

"9. Unfair claim settlement practices. Committing any of the following acts, if done without just cause and if performed with a frequency indicating a general business practice:

"a. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.

\* \* \* \* \* \*

"d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear."

We need not determine whether Chapter 26.1–04, N.D.C.C., creates a private civil right of action [*see Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 504 (N.D.1987); *compare Farmer's Union Central Exchange v. Reliance Ins.* 626 F.Supp. 583, 590 (D.N.D.1985) *with Farmer's Union Central Exchange v. Reliance Ins. Co.*, 675 F.Supp. 1534, 1536–1538 (D.N.D.1987) and *Moradi–Shalal v. Fireman's Fund Ins.*, 46 Cal.3d 287, 250 Cal. Rptr. 116, 758 P.2d 58 (1988)], because even assuming that it does, we agree with WMAC that these statutory provisions are as a matter of law not applicable under the circumstances of this case. Section 26.1–04–03(9) specifically requires that the proscribed acts be "performed with a frequency indicating a general business practice" to constitute an unfair claim settlement practice. Construing similar language in *Mead v. Burns*, 199 Conn. 651, 509 A.2d 11, 16 (1986), the Supreme Court of Connecticut held that claims of unfair settlement practices under its state act "require a

showing of more than a single act of insurance misconduct." There is no evidence here that WMAC was involved in insurance misconduct with such a frequency indicating a general business practice.

Moreover, even if we were to interpret Volk's claim as alleging breach of an insurer's duty to act in good faith [*see Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638 (N.D.1979); *Smith v. American Family Mutual Insurance Co.*, 294 N.W.2d 751 (N.D.1980)], we have only allowed insureds or intended third-party beneficiaries to sue under that theory. *See Szarkowski v. Reliance Ins. Co.*, supra, 404 N.W.2d at 505. WMAC's mortgage guaranty policy lists SMI as the insured. There is no dispute that the claims against WMAC for losses incurred under the policy were filed by either NDHFA or SMI and that those claims have been paid. Volk has failed to present evidence sufficient to raise a reasonable inference that he was an intended third-party beneficiary of the mortgage insurance contract. *See* § 9–02–04, N.D.C.C.; *Russell v. Bank of Kirkwood Plaza*, 386 N.W.2d 892, 895–896 (N.D.1986). We therefore conclude that the trial court did not err in granting summary judgment dismissing Volk's action against WMAC under the Unfair Insurance Practices Act.

Accordingly, we affirm the summary judgment dismissal of Volk's action against WMAC under the Unfair Insurance Practices Act. We reverse the summary judgment dismissals of Volk's abuse of process action against the defendants and remand for trial.

VANDE WALLE, LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.