Kim DVORAK, Al Dvorak and
Betty Dvorak, Plaintiffs
and Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant and Appellee.

Civ. No. 930075.

Supreme Court of North Dakota.

Nov. 9, 1993.

Lynn M. Boughey (argued), Minot, for plaintiffs and appellants.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant and appellee; argued by Richard H. McGee.

LEVINE, Justice.

In this case, we decide that an insurer's duty to its policyholders to negotiate a settlement of a potential claim in good faith and with fair dealing does not extend to injured third parties with potential claims against insureds. Accordingly, we affirm the summary judgment dismissing the claims of Kim Dvorak and her parents, Al and Betty Dvorak, against American Family Mutual Insurance Company (American).

Kim was injured on October 14, 1989, when a vehicle owned by Greg Ackerman was accidentally driven over her foot. The vehicle was insured by American. Its claim adjustor, R.C. Smith, investigated the accident, and on September 21, 1990, offered the Dvoraks $5,000 in settlement for Kim's injuries, noting that he had been "following closely with the attending physicians ... Kim's progression with respect to her injury." The Dvoraks rejected the offer. On December 28, 1990, American offered to settle the claim for the policy liability limit of $25,000. Smith's letter to the Dvoraks accompanying that offer confirmed that the no-fault Personal Injury Protection provisions under Ackerman's policy would continue to cover Kim's medical expenses to a limit of $30,000.[1] The Dvoraks accepted this offer in April 1991, and settled their claim with American.

Thereafter, the Dvoraks retained counsel and sued American for damages, alleging that the initial $5,000 offer was unreasonable and made in bad faith. The Dvoraks alleged in their complaint that American's initial low offer constituted "a breach of contract, actual fraud, constructive fraud, deceit, negligence, a breach of the implied covenant of good faith, arbitrary, unreasonable, and vexatious conduct, and bad faith." The Dvoraks sought compensatory damages of $25,000, ex-

---

1. The release was not made a part of the record   on appeal.

emplary damages of $50,000, attorney fees and costs.

American filed a motion for summary judgment. The trial court, concluding that the Unfair Insurance Practices Act, Chapter 26.1–04, N.D.C.C., does not create a private cause of action and that American owed the Dvoraks no duty to settle the claim "which can give rise to an actionable claim," granted American's motion for summary judgment. The Dvoraks then filed this appeal.

Under Rule 56, N.D.R.Civ.P., a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, and that the movant is entitled to judgment as a matter of law. *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596 (N.D.1987). The party opposing a motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must respond by affidavit or as otherwise provided under Rule 56, N.D.R.Civ.P., showing that there is a genuine issue for trial. *Muchow v. Lindblad*, 435 N.W.2d 918 (N.D.1989).

The gravamen of the Dvoraks' complaint is that American's initial offer of settlement was so low that it was made in bad faith and constituted a failure to negotiate in good faith. The Dvoraks assert that the trial court erred in concluding that American owed the Dvoraks no duty to negotiate a good-faith settlement because the Dvoraks are not third-party beneficiaries under Ackerman's liability policy.

An insurer has a duty to act in good faith in its relationships with its policyholders. *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638 (N.D.1979). The duty is imposed by the law and emanates from the insurer's obligation to act fairly and in good faith in discharging its contractual responsibilities. *Id.* at 645.

In *Szarkowski v. Reliance Insurance Co.*, 404 N.W.2d 502 (N.D.1987), we applied this duty of good faith and fair dealing to a third party who was an intended claimant and third party beneficiary because the performance bond expressly gave him the right to bring a claim for relief against the surety if the principal failed to pay for delivered labor and materials. However, this case is distinguishable from *Szarkowski*, because the Dvoraks had no contractual right under the insurance policy to directly sue American; they had only a potential tort claim against Ackerman, American's insured. Absent a clause in the insurance contract bestowing the right to bring a direct action against the insurer, an injured party's claim must be asserted against the tortfeasor, not the tortfeasor's insurer. *Shermoen v. Lindsay*, 163 N.W.2d 738 (N.D.1968); *see also Miller v. Market Men's Mutual Ins. Co.*, 262 Minn. 509, 115 N.W.2d 266 (1962). Here, the Dvoraks were not intended claimants or third party beneficiaries under the insurance contract, but only incidental beneficiaries. *See Hellman v. Thiele*, 413 N.W.2d 321 (N.D. 1987).

An insurer's duty of good faith and fair dealing is owed to the insured, but not to third party claimants. *Winchell v. Aetna Life & Casualty Insurance Co.*, 182 Ind.App. 261, 394 N.E.2d 1114 (1979); *Scroggins v. Allstate Insurance Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979). *Couch on Insurance 2d* § 51:136 (Rev.Ed.). The California Supreme Court in *Murphy v. Allstate Insurance Co.*, 17 Cal.3d 937, 132 Cal. Rptr. 424, 426–427, 553 P.2d 584 (1976), explained why the covenant of good faith and fair dealing, which is implied by law in every insurance contract, creates an implied duty to settle for the benefit of the insured, but does not give rise to a claim for relief by an injured claimant:

> "The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. . . .

> "The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach. Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage."

*See also Coleman v. Gulf Insurance Group*, 41 Cal.3d 782, 226 Cal.Rptr. 90, 718 P.2d 77

(1986). Adhering to our rationale in *Corwin* that the genesis of an insurer's duty to negotiate in good faith is its contractual responsibilities to the insured, we conclude that the duty does not extend to injured claimants who have no contractual relationship with the insurer.[2] The Dvoraks have failed to cite contrary authority and we have found none. Consequently, we hold that the trial court did not err in concluding that American owed no duty to the Dvoraks to negotiate a good faith settlement.

■■■■ The Dvoraks assert that they have raised viable claims for fraud and deceit because American misrepresented the seriousness of Kim's injury when the adjustor implied that Kim's injury was not serious and offered only $5,000 in settlement of the claim. The only significant distinction between the torts of fraud and deceit is whether the wrongdoer happens to be a party to a contract. *Dewey v. Lutz*, 462 N.W.2d 435 (N.D. 1990). Technically, fraud under Section 9–03–08, N.D.C.C., applies to misrepresentations between parties to a contract, while deceit under Section 9–10–02, N.D.C.C., applies when there is no contract between the parties. *West v. Carlson*, 454 N.W.2d 307 (N.D.1990). However, the conduct prohibited under the separate statutory definitions of fraud and deceit is substantially identical. *Dewey v. Lutz*, 462 N.W.2d 435 (N.D.1990). A key element in proving fraud or deceit is reliance by the complaining party upon the false or misleading representations. *Phoenix Assurance Co. of Canada v. Runck*, 366 N.W.2d 788 (N.D.1985). *See also* 37 Am. Jur.2d *Fraud and Deceit* §§ 1, 296 (1968). Here, the Dvoraks claim of deceit must fail, as a matter of law, because there was no reliance upon the adjustor's misrepresentation of fact which accompanied the initial settlement offer. Instead, the Dvoraks rejected the offer, and ultimately settled their claim for the policy limit of $25,000. Accord-

ingly, the trial court committed no error in dismissing the claims of fraud and deceit.

■■■ The Dvoraks also assert that the trial court erred in concluding that Chapter 26.1–04, N.D.C.C., does not create a private cause of action. The resolution of this issue rests squarely upon our holding in *Volk v. Wisconsin Mortgage Assurance Co.*, 474 N.W.2d 40 (N.D.1991).

Section 26.1–04–03(9)(a) and (d), N.D.C.C., is the basis of the Dvoraks' argument as it was in *Volk*. It says:

> "*26.1–04–03. Unfair methods of competition and unfair or deceptive acts or practices defined.* The following are unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> \*  \*  \*  \*  \*  \*
>
> "9. Unfair claim settlement practices. *Committing any of the following acts,* if done without just cause and *if performed with a frequency indicating a general business practice:*
>
> "a. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.
>
> \*  \*  \*  \*  \*  \*
>
> "d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." [Emphasis added.]

The plaintiff in *Volk* alleged that the defendant company violated the Unfair Insurance Practices Act by refusing to accept a deed in lieu of foreclosure. We declined to determine whether Chapter 26.1–04, N.D.C.C., creates a private, civil right of action. Instead, we held as a matter of law that there is no claim for relief under the statute if the plaintiff fails to make a showing that the defendant insurance company is involved in

---

2. Chapter 9–10, N.D.C.C., codifies the tort of deceit. Everyone owes a duty to tell the truth to all who rely on his or her statements. However, the insurer's duty of good faith is not statutory, but is implied by law. *Corwin, supra,* 279 N.W.2d 638. The genesis of the insurer's duty of good faith is the contractual relationship between the insurer and its policyholders from

which the law implies a duty of fair dealing in paying claims, providing a defense to claims, negotiating settlements, and fulfilling all other contractual obligations. *See Seifert v. Farmers Union Mutual Insurance Co.,* 497 N.W.2d 694, 698 (N.D.1993). The tort of deceit under Chapter 9–10, N.D.C.C., is separate and distinct from this duty of good faith.

prohibited conduct "with a frequency indicating a general business practice." *Volk, supra,* 474 N.W.2d at 45.

Here, the Dvoraks assert that American's initial settlement offer of $5,000 constituted a failure to act in good faith. However, they have not presented evidence by affidavit or other means that American engaged in prohibited conduct "with a frequency indicating a general business practice." They have alleged nothing more than a single act of misconduct. Following *Volk,* we conclude, as a matter of law, that the Dvoraks have not raised an actionable claim against American under Chapter 26.1–04, N.D.C.C.[3]

For the reasons stated in this opinion, we agree with the trial court that the Dvoraks have failed to raise an actionable claim and that American is entitled to dismissal of the case on its merits. The summary judgment is affirmed.

LAWRENCE A. LECLERC, District Judge, and SANDSTROM and VANDE WALLE, JJ.

LAWRENCE A. LECLERC, District Judge, sitting in place of NEUMANN, J., disqualified.

MESCHKE, Justice, concurring in result.

I concur in the result of the majority opinion. I write separately to remark on two features of the majority opinion.

The Dvoraks did not rely on the no-fault insurance coverage in this case. Unlike a fault-based plaintiff, a claimant under a no-fault policy is made the insured by law. NDCC 26.1–41–06. If the Dvoraks had claimed that American Family failed to offer no-fault benefits in the first settlement attempt, this case would be controlled by *Szarkowski v. Reliance Insurance Company,* 404 N.W.2d 502 (N.D.1987). However, the Dvoraks did not make this argument to the trial court or to this court. We do not consider questions not briefed or argued. *Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 807 (N.D.1989).

I concur with the majority that it is unnecessary in this case to decide whether NDCC Ch. 26.1–04 creates a private civil claim for relief because there was no allegation or showing that the insurer engaged in prohibited conduct "with a frequency indicating a general business practice." Our refraining from deciding an unnecessary question, however, should not be taken as some unspoken endorsement of the cynical and contradictory federal doctrine, invented in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that the courts should not enforce a Congressional enactment unless Congress makes it even longer to spell out how the courts should enforce it.

The Eighth Circuit Court of Appeals recently relied upon that *Cort v. Ash* doctrine, and this court's occasional employment of it to construe a federal law, to conclude that this court "would look to the same considerations in assessing a state statute." *Dahl v. ConAgra, Inc.,* 998 F.2d 619, 621 (8th Cir. 1993). I do not believe that is correct. One component of the customary *Cort v. Ash* analysis contemplates that an unsuccessful federal-law litigant will often be relegated "to whatever remedy is created by state law," whenever a civil claim is not implicit or explicit in a parallel federal law. *Cort v. Ash,* 422 U.S. at 84, 95 S.Ct. at 2091. This federal doctrine does not control our interpretation of laws enacted by the North Dakota legislature. *See Fargo Women's Health v. FM Women's Help,* 444 N.W.2d 683 (N.D.1989). In my view, a federal principle of statutory construction should not regulate whether a private claimant is entitled to relief under a state enactment like NDCC Ch. 26.1–04 on Prohibited Practices in Insurance Business.

---

**3.** It is unnecessary to decide whether, under other circumstances, Chapter 26.1–04, N.D.C.C., might create a private civil claim for relief.